CM_CV2020061773_2827480

Summit County Clerk of Courts
205 South High Street
Akron, Ohio 44308

**USPS CERTIFIED MAIL**

9214 8901 5774 4600 0001 0125 88

GENERAL SECURITY INDEMNITY CO. OF ARIZONA
199 WATER ST STE 2100
NEW YORK, NY 10038



EXHIBIT A

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER: CV-2020-06-1773

INDIANA GRQ, LLC
701 Chippewa Avenue
South Bend, IN, 46614

-VS-                                                                    **SUMMONS**

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY
1299 ZURICH WAY
SCHAUMBURG, IL 60196

**TO the following:**

GENERAL SECURITY INDEMNITY CO. OF ARIZONA
199 WATER ST STE 2100
New York, NY 10038

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto. The name and address of the Plaintiff's attorney is:

JODI DEANN SPENCER-JOHNSON
600 Superior Avenue East
SUITE 1600
Cleveland, OH 44114

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service. Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

July 23, 2020

## IN THE COURT OF COMMON PLEAS
## SUMMIT COUNTY, OHIO

| | |
|---|---|
| INDIANA GRQ, LLC,<br>701 CHIPPEWA AVENUE<br>SOUTH BEND, INDIANA<br><br>    Plaintiff,<br><br>v.<br><br><br>AMERICAN GUARANTEE AND LIABILITY<br>INSURANCE COMPANY,<br>1299 ZURICH WAY<br>SCHAUMBURG, IL 60196<br><br>INTERSTATE FIRE & CASUALTY COMPANY,<br>225 W WASHINGTON ST., STE 180<br>CHICAGO, IL 60606<br><br>STARR SURPLUS LINES INSURANCE COMPANY,<br>399 PARK AVENUE 8TH FLOOR<br>NEW YORK, NY 10022<br><br>CHUBB CUSTOM INSURANCE COMPANY,<br>15 MOUNTAIN VIEW ROAD<br>WARREN, NJ 07059<br><br>GENERAL SECURITY INDEMNITY COMPANY<br>OF ARIZONA,<br>7272 EAST INDIAN SCHOOL ROAD SUITE 500<br>SCOTTSDALE, AZ 85251<br><br>AXIS SURPLUS INSURANCE COMPANY, and<br>11680 GREAT OAKS WAY SUITE 500<br>ALPHARETTA, GA 30022<br><br>IRONSHORE SPECIALTY INSURANCE COMPANY,<br>8601 N. SCOTTSDALE ROAD, STE. 300<br>SCOTTSDALE, AZ, US 85253<br><br>    Defendants. | Judge _____<br><br>Case No. _____<br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT FOR**<br>**DECLARATORY**<br>**RELIEF, BREACH OF**<br>**CONTRACT AND**<br>**BAD FAITH**<br><br>**JURY DEMAND**<br>**ENDORSED HEREON** |

## COMPLAINT

Plaintiff Indiana GRQ, LLC (referred to herein as "IRG" based on corporate affiliation with IRG Realty Advisors, LLC and Industrial Realty Group, LLC), by and through their undersigned counsel, and for its Complaint against Defendants (the "Defendant Insurers"), alleges as follows:

### NATURE OF ACTION

1. This is a civil action for declaratory judgment, breach of contract and bad faith brought by IRG for money damages and other appropriate relief arising out of the Defendant Insurers' breach of a property insurance policy (the "Policy") that provides insurance coverage for damage to property at IRG's facility at 701 Chippewa Avenue in South Bend, Indiana (the "Plant").

2. On August 15, 2016, water inundated the Plant's underground electrical vaults, destroying electrical switchgear, transformers and main switches and related electrical equipment and components in 6 electrical distribution substations (the "Event").

3. IRG and IRG Realty Advisors, LLC timely reported the claim to Defendant Insurers.

4. Representatives of the Defendant Insurers conducted multiple site inspections following the reporting of the loss.

5. Defendant Insurers, in the early stages of the claims process, concluded that the main electrical switchgear, transformers and main switches were destroyed. The destroyed electrical transformers contained Polychlorinated Biphenyls (or PCBs) in the

2

transformer oil which was spread throughout the transformer vaults, tunnels, and basement of the facility. In addition, the water damaged and spread asbestos containing materials (ACM) that was previously in good condition on the utilities in these areas.

6. Two categories of damage are at issue in this suit. First, IRG seeks costs to replace and restore electrical equipment at the Plant to pre-Event capacity. Second, IRG seeks costs to clean-up and mitigate existing environmental damage and the cost of further testing for contaminants in soil, sediment and groundwater.

7. With respect to electrical equipment, Defendants paid for part of IRG's loss, but refused to pay for the cost of bringing electrical capacity and redundancy back to pre-event levels.

8. With respect to PCBs, Defendants also paid over $2 million to repair and cleanup the Plant, but refused to finish the remediation project they started when they discovered how much it would cost.

9. To date, IRG has paid in full its $1 million deductible for the loss, and the Defendant Insurers have paid IRG in excess of $2.6 million in several payments from January 2017 to May 2018, including significant payments related to removing the contaminated water in the sub-grade areas of the facility and the remediation of PCB contamination at the Plant.

10. Prior to commencement of this litigation, IRG believed that it was in the final stages of closing out this claim. During the entire time period in which Defendant Insurers adjusted the claim, there was no indication that the claim would not be satisfactorily resolved. Yet, because of Defendant Insurers' conduct at the end of the claims process, IRG now finds itself having to litigate this claim.

11.　The failure of the Defendant Insurers to acknowledge their coverage obligations and pay the claim is a breach of their contractual duties causing damage to IRG, and their attempt to avoid payment for the entirety of the loss, after paying the loss for years, is a bad faith effort to avoid their contractual duties.

## THE PARTIES

12.　IRG is a Delaware limited liability corporation headquartered in Indiana that owns the Plant. IRG's affiliate, IRG Realty Advisors, LLC, manages the Plant from its offices in Richfield, Ohio, including the handling and oversight for this insurance claim. Industrial Realty Group, LLC has ultimate management control for Indiana GRQ, LLC and IRG Realty Advisors, LLC. All three entities are named insureds under the policies at issue.

13.　Defendant American Guarantee and Liability Insurance Company ("American Guarantee") is an Illinois company with its principal place of business in Schaumberg, Illinois. Upon information and belief, American Guarantee is a subsidiary of Zurich North America.

14.　Defendant Interstate Fire & Casualty Company is, upon information and belief, an Illinois corporation with its with its principal place of business in Illinois.

15.　Defendant Starr Surplus Lines Insurance Company is, upon information and belief, a New York corporation with its principal place of business in New York.

16.　Defendant Chubb Custom Insurance Company is, upon information and belief, a New Jersey corporation with its principal place of business in New Jersey.

4

17. Defendant General Security Indemnity Company of Arizona is, upon information and belief, an Arizona corporation with its principal place of business in Arizona.

18. Defendant Axis Surplus Insurance Company is, upon information and belief, a Georgia corporation with its principal place of business in Georgia.

19. Defendant Ironshore Specialty Insurance Company is, upon information and belief, an Arizona corporation with its principal place of business in Arizona.

## JURISDICTION AND VENUE

20. This Court has personal jurisdiction over the parties pursuant to Ohio Revised Code § 2307.382, § 3901.17 and Ohio Civil Rule 4.3(A) because, on information and belief, each of the Defendant Insurers transacts business in Ohio and/or contracted to insure businesses or property located within Ohio which makes them subject to the jurisdiction of this Court.

21. This Court has subject matter jurisdiction over this matter pursuant to Ohio Revised Code § 2305.01 and Ohio Revised Code Chapter § 2721.

22. Venue is proper in this Court pursuant to Civil Rule 3 and Civil Rule 4.3 because, *inter alia*, the Defendant Insurers are corporations that transact business in Ohio and, as more fully discussed below, the transactions and occurrences set forth herein, including the handling of the current insurance claim, occurred within and about Summit County and the Defendant Insurers directed correspondence to IRG within Summit County that gave rise to the claims for relief requested herein..

## FACTUAL BACKGROUND

23. The Plant is located in South Bend, Indiana.

24. IRG purchased the Plant on October 1, 1991 and utilizes the asset as investment property while acting in the role of landlord and leasing space to commercial tenants. The Plant occupies approximately 975,000 square feet, occupied by 11 tenants on the property at time of Event.

### A. The Policies

25. During the relevant period, from April 15, 2016 to April 15, 2017, IRG was insured under a tower of property insurance with total limits in excess of $500 million. Copies of the relevant insurance policies are voluminous and are in the possession of Defendant Insurers, and therefore are not attached hereto. Copies will be made available upon request.

26. The Defendant Insurers sold IRG the first layer of coverage that is relevant to the claim arising from the property damage at the South Bend Plant. This first layer of coverage consisted of $30 million in coverage shared among the seven Defendant Insurers named herein.

27. Defendant American Guarantee issued the lead policy form and endorsements and accepted 66.67% of the risk, or $20 million in limits.

28. Defendant Interstate Fire & Casualty Company agreed to follow form to the lead policy issued by American Guarantee and accepted 10% of the risk, or limits of $3 million.

29. Defendant Starr Surplus Lines Insurance Company agreed to follow form to the lead policy issued by American Guarantee and accepted 3.33% of the risk, or limits of $1 million.

6

30. Defendant Chubb Custom Insurance Company agreed to follow form to the lead policy issued by American Guarantee and accepted 3.33% of the risk, or limits of $1 million.

31. Defendant General Security Indemnity Company of Arizona agreed to follow form to the lead policy issued by American Guarantee and accepted 3.33% of the risk, or limits of $1 million.

32. Defendant Axis Surplus Insurance Company agreed to follow form to the lead policy issued by American Guarantee and accepted 6.66% of the risk, or limits of $2 million.

33. Defendant Ironshore Specialty Insurance Company agreed to follow form to the lead policy issued by American Guarantee and accepted 6.66% of the risk, or limits of $2 million.

34. The Insuring Agreement agreed to by all Defendant Insurers states

> This Policy insures against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property at an Insured Location described in section II-2.01, all subject to the terms conditions and exclusions stated in this Policy.

35. The Parties agree that there was a Covered Cause of Loss to Covered Property at an Insured Location.

36. The Policy also provides insurance for "Special Coverages" and "Described Causes of Loss."

37. Among the "Special Coverages" is specific coverage for Debris Removal that states:

> This Policy covers the reasonable and necessary costs incurred to demolish and remove debris of property from an Insured Location that remains following direct physical loss or damage resulting from a Covered Cause of Loss.

38. The Debris Removal provision also provides coverage for removal of contaminated Covered Property if the contamination of the debris resulted from direct physical loss or damage caused by a Covered Cause of Loss.

39. IRG is required to remove contaminated debris from the Plant and such costs are covered by the terms of the Policies.

40. The Policies also provide as a "Special Coverage" payments for decontamination costs at Covered Property.

41. The decontamination provision of the Policy states:

> If Covered Property is Contaminated from direct physical loss of or damage caused by a Covered Cause of Loss ... then this Policy covers ... the increased cost of decontamination and/or removal of such Contaminated Covered Property.

42. IRG is required to decontaminate, remove and/or remediate contaminated Covered Property at the Plant, and such costs are covered under the Policies.

### B. Defendants' Acceptance and Later Denial of IRG's Insurance Claim

43. IRG's managing affiliate IRG Realty Advisors, LLC handled the Insurance Claim primarily from IRG Realty Advisors' offices in Richfield, Ohio. Further, the Defendant Insurers' communications relating to the Insurance Claim were directed to IRG Realty Advisors' Richfield offices.

44. Up to and until Defendants received IRG's environmental and electric third party reports documenting the totality of the loss at the Plant, Defendant Insurers paid a portion of IRG's loss, including some, but not all, of the environmental and electrical costs to bring the Plant's electrical system and capacity to pre-flood condition.

45. Prior to the Event, the Plant was powered from two independent sources of electrical power.

8

46. Indiana Michigan Power ("IMP") supplied a 13,200 volt above ground service loop around the plant and a separate 4,160 volt underground service to 6 underground, Plant owned, unit substations for power and lighting. Prior to the Event, this translated as an available power capacity of 11,800 KVA.

47. As a result of the August 15, 2016 Event, the 4,160 volt underground substation electrical service was completely destroyed. The intrusion of water permanently damaged the underground cable feeds, transformers, disconnects, main switches, panelboards, switchgear & electrical equipment in six underground substations.

48. After the August 15, 2016 Event, as a temporary solution to plant power loss, the 13,200 volt electrical, above ground loop, was extended by IMP. This provided 1000 KVA of system capacity.

49. This temporary electrical solution did not replace the original electrical system capacity of the underground independent electrical power supply. As a result, the Plant lost 10,800 KVA of electrical system capacity to market to prospective tenants. The Plant also lost its dual power option.

50. Defendant Insurers paid IRG for this temporary power solution but have refused to pay IRG for the cost to restore electrical capacity to the level that existed prior to the loss.

51. The cost to replace the damaged electrical equipment and cable to bring the Plant up to pre-loss capacity and functionality is approximately $10.5 million.

52. In addition, inundation of the transformers released PCB-containing fluids from the damaged underground electrical equipment.

9

53. Response activities to date included sampling, evaluation, and pumping water out of the tunnels, vaults and basement, treating PCB contaminated water, and employing an oil skimmer to separate oil from the water, which were paid for by Defendant Insurers. Defendants agreed to cover and did cover over $2 million in cleanup costs to date.

54. In addition, debris from the August 15, 2016 Event, including debris containing asbestos, has been contaminated by the presence of PCBs and must be disposed of consistent with legal requirements.

55. Completing the minimum clean-up and remediation at the Plant is expected to cost an additional $10,869,510. In addition, necessary environmental assessment (testing of soil, sediment and groundwater) is expected to cost an additional $295,500. Finally, if through the environmental assessment process the plant site requires additional remediation, the scope of work could cost millions of dollars more.

56. Defendant Insurers were aware of the electrical and environmental aspects of the claim at the Plant from the very outset of the claim adjusting process.

57. On May 16, 2018, IRG and Defendant Insurers' representatives met at the Plant to discuss what was needed from IRG to close out the claim. The meeting attendees agreed that IRG would prepare and submit to Defendant Insurers information regarding remaining unpaid losses.

58. IRG submitted to Defendant Insurers' representatives the requested information concerning outstanding electrical and environmental issues following the May 16, 2018 meeting.

59. On August 23, 2019, Defendants denied coverage for all yet to be paid covered losses under the Policy.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – R.C. § 2721.01 et seq.)

60. IRG incorporates by reference the allegations set forth in Paragraphs 1 through 59 above.

61. The terms and conditions of the policies obligate Defendant Insurers to pay for: (a) the costs required to repair and replace damaged covered property at the Plant, (b) the replacement costs of damaged electrical equipment at the Plant, (c) the removal of contaminated debris and other contaminants from the property, and (d) to pay for environmentally-related remediation caused by the August 15, 2016 Event.

62. IRG continues to incur additional costs in connection with the damage resulting from the Event at the Plant.

63. Both directly and through its managing affiliate IRG Realty Advisors LLC, IRG has fully satisfied all relevant terms and conditions precedent to coverage under the Defendant Insurers' Policies, or such terms and conditions have been waived by Defendant Insurers or no longer apply.

64. An actual and justiciable controversy exists between IRG and the Defendant Insurers regarding the obligations of the Defendant Insurers under the Policies.

65. A declaratory judgment will terminate the controversy between IRG and the Defendant Insurers regarding the Insurers obligation to pay IRG's loss relating to the property damage at the Plant.

11

66. As a foreseeable consequence of Defendant Insurers' conduct, IRG has been required to retain counsel to prosecute this action and is therefore entitled to attorneys' fees and costs of litigation in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Breach of Contract)

67. IRG incorporates by reference the allegations set forth in Paragraphs 1 through 66 above.

68. The insurance Policies are valid and binding contracts between IRG and the Defendant Insurers.

69. The Defendants Insurers' Policies require that the insurers indemnify Loss that IRG incurred arising out of the Event at the Plant.

70. The Defendant Insurers breached their contractual obligation to IRG by denying coverage for and failing to indemnify IRG its outstanding and unreimbursed damages incurred or to be incurred in connection with the Event.

71. The Defendant Insurers' denial of coverage is in contravention of the terms of the Policies.

72. Both directly and through its managing affiliate IRG Realty Advisors LLC, IRG has fully satisfied all relevant terms and conditions precedent to coverage under the Defendant Insurer Policies, or such terms and conditions have been waived by Defendant Insurers by their breach of the contract and/or other actions and no longer apply.

73. As a direct and proximate result of the Defendant Insurers' breach of contract, IRG has sustained damages in an amount to be determined at trial.

74. As a foreseeable consequence of Defendant Insurers' conduct, IRG has been required to retain counsel to prosecute this action and is therefore entitled to attorneys' fees and costs of litigation in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Bad Faith)

75. IRG incorporates by reference the allegations set forth in Paragraphs 1 through 74 above.

76. The Defendant Insurers paid electrical and environmental costs up to and until their August 23, 2019 denial of coverage (the "Denial of Coverage Letter").

77. Among other things, the Denial of Coverage Letter labeled elements of the Event as "New Claims" and denied all liability for such costs.

78. There were no "New Claims."

79. The purported reasons cited by the Defendant Insurers when they denied the claim in their August 23, 2019 Denial of Coverage Letter were known to the Defendant Insurers when they were paying IRG's claim, yet they were not raised when Defendants were paying for IRG's loss.

80. There is no reasonable justification for the Defendant Insurers to deny coverage in their Denial of Coverage Letter, as IRG seeks only for the Defendant Insurers to continue paying for the totality of the exact kind of losses they had paid in the past.

81. Defendant Insurers placed their own interests ahead of their insured, made an unfounded refusal to pay policy proceeds; exercised an unfair advantage to pressure IRG into settlement of its claim; and deceived the insured.

82. The Defendant Insurers denied liability knowing that there is no rational, principled basis for doing so and thus acted with conscious wrongdoing.

83. The Defendant Insurers had no reasonable justification for refusing the claim and acted with actual knowledge of that fact.

84. The Defendant Insurers' course of conduct in handling IRG's claim is a breach of their covenant of good faith and fair dealing with respect to their claims handling practices.

85. The Defendant Insurers' intentional denial and refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification and, therefor is a breach of their covenant of good faith and fair dealing with respect to payment of the claim.

86. The Defendant Insurers have compelled IRG to incur attorneys' fees and to initiate this litigation to obtain the benefits to which IRG is entitled under the Policies.

87. The Defendant Insurers' conduct, such as that described above, was arbitrary and capricious, was malicious, reckless, willful, wanton, and gross, and demonstrated a conscious disregard for IRG's rights, and caused IRG substantial harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IRG requests judgment on the First Cause of Action, including:

(a) An Order declaring, pursuant to the terms and conditions of the Defendant Insurers' Policies, that Defendant Insurers are obligated to pay IRG for all of IRG's unreimbursed covered losses;

(b) An Order declaring that Defendant Insurers are obligated to indemnify IRG for environmentally related costs required to be spent in the future;

(c) An Order declaring that Defendant Insurers are obligated to indemnify IRG for electrical costs to bring the Plant back to pre-loss electrical capacity;

(d) All other foreseeable damages resulting from Defendant Insurers' wrongful denial of coverage, including but not limited to IRG's attorneys' fees and costs incurred in prosecuting this action;

(e) All pre-judgment and post-judgment interest permitted by law; and

(f) All other relief that this Court deems just and proper.

WHEREFORE, Plaintiff IRG requests judgment on its Second Cause of Action, and that the Court award

(a) IRG's actual and compensatory damages as proven at trial;

(b) IRG's consequential damages as proven at trial;

(c) Pre-judgment and post-judgment interest on the Court's award of damages;

(d) IRG's costs and attorneys' fees incurred herein, either as foreseeable damages for Defendant Insurers breach or as otherwise provided by applicable law; and

(e) All other relief that this Court deems just and proper.

WHEREFORE, Plaintiff IRG requests judgment on its Third Cause of Action, and that the Court award

(f) IRG's actual and compensatory damages as proven at trial;

(g) IRG's consequential damages as proven at trial;

(h) Punitive damages for the Defendant Insurers' bad faith;

15

(i) Pre-judgment and post-judgment interest on the Court's award of damages;

(j) IRG's costs and attorneys' fees incurred herein, either as foreseeable damages for Defendant Insurers breach or as otherwise provided by applicable law; and

(k) All other relief that this Court deems just and proper.

DATED June 17, 2020.

Respectfully submitted,

/s/ Jodi D. Spencer-Johnson
Jodi D. Spencer-Johnson (0074139)
Brouse McDowell LPA
600 Superior Ave. E, Ste. 1600
Cleveland, OH 44114
Tel. (216) 830-6809
Fax (216) 830-6807
jjohnson@brouse.com

P. Wesley Lambert (0076961)
Brouse McDowell LPA
388 S. Main St., Ste. 500
Akron, OH 44311
Tel. (330) 535-5711
Fax (330) 253-8601
wlambert@brouse.com

*Of counsel:*

Mark Miller, Esq.
William O'Neil, Esq.
MILLER FRIEL, PLLC
1200 New Hampshire Avenue, N.W.
Suite 800
Washington, D.C. 20036

*Attorneys for Plaintiffs Industrial Realty Group, LLC.*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

> */s/ Jodi D. Spencer-Johnson*
> Jodi D. Spencer-Johnson (0074139)
> Brouse McDowell LPA
> 600 Superior Ave. E, Ste. 1600
> Cleveland, OH 44114
> Tel. (216) 830-6809
> Fax (216) 830-6807
> jjohnson@brouse.com
>
> *Attorneys for Plaintiffs Industrial Realty Group, LLC*