UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INDIANA GRQ, LLC, | ) | CASE NO. 5:20-cv-1812 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, et al., | ) ) | |
| | ) ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' motion to transfer venue to the United States District Court for the Northern District of Indiana. (Doc. Nos. 15 & 16, Motion and Memorandum in Support [together, "Mot."].) Plaintiff filed a memorandum in opposition (Doc. No. 26 ["Opp'n"]), and defendants filed a reply (Doc. No. 28 ["Reply"]). For the reasons set forth herein, defendants' motion to transfer venue is granted.

**I.  Background**

On June 18, 2020, plaintiff Indiana GRQ, LLC ("Indiana GRQ" or "plaintiff") filed a complaint in the Court of Common Pleas of Summit County, Ohio against seven insurance companies. (Doc. No. 1-1, Complaint ["Compl."].) On August 14, 2020, the insurance companies (collectively, the "Insurers" or "defendants") removed the action to this Court on the basis of diversity jurisdiction. (*See* Doc. No. 1, Notice of Removal.)

Indiana GRQ is "a Delaware limited liability corporation headquartered in Indiana[.]" (Compl. ¶ 12.) The seven Insurers include two from Illinois, two from Arizona, and one each from

New York, New Jersey, and Georgia. (*Id*. ¶¶ 13–19.) There is no dispute that none of the named parties are incorporated in or maintain principal places of business in Ohio.

Indiana GRQ owns property at 701 Chippewa Avenue in South Bend, Indiana (the "Plant"). (*Id*. ¶ 1.) According to Mark Miley, Senior Vice President of Corporate Services, Chief Operating Officer, and Chief Financial Officer of Indiana GRQ's affiliate, non-party IRG Realty Advisors, LLC ("IRG" or "managing company"), the Plant is Indiana GRQ's single asset. (Doc. No. 26-1, Declaration of Mark Miley ["Miley Decl."] ¶ 1.) "[IRG] manages the Plant from its offices in Richfield, Ohio, including the handling and oversight for [the] insurance claim [at issue here]." (*Id*. ¶ 12.) There is no dispute that this location, where IRG maintains just one of its offices,[1] is the only connection to Ohio.

Indiana GRQ seeks to recover money damages and other relief arising out of the Insurers' alleged breach of a property insurance policy covering the Plant.[2] (*Id*. ¶ 1.) "On August 15, 2016, water inundated the Plant's underground electrical vaults, destroying electrical switchgear, transformers and main switches and related electrical equipment and components in 6 electrical distribution substations (the 'Event')." (*Id*. ¶ 2.) In response to a timely claim, representatives of the Insurers "conducted multiple site inspections[,]" concluding that "the main electrical switchgear, transformers and main switches were destroyed." (*Id*. ¶¶ 4–5.) The loss included environmental damage from polychlorinated biphenyls ("PCBs"), transformer oil, water, and asbestos. (*Id*.) Indiana GRQ seeks to recover both "costs to replace and restore electrical equipment

---

[1] IRG also maintains an office in Larchmont, New York. (Miley Decl. ¶ 2.)

[2] Indiana GRQ alleges that the Plant "was insured under a tower of property insurance with total limits in excess of $500 million." (Compl. ¶ 25.) The Insurers "sold [plaintiff] the first layer of coverage that is relevant to the claim . . . consist[ing] of $30 million in coverage shared among the seven Defendant Insurers named herein." (*Id*. ¶ 26.) Each of the Insurers accepted a percentage of the total risk, with associated limits of coverage. (*Id*. ¶¶ 27–33.)

at the Plant to pre-event capacity[]" and "costs to clean-up and mitigate existing environmental damage and the cost of further testing for contaminants in soil, sediment and groundwater." (*Id.* ¶ 6.)

As of the filing of the complaint, the Insurers had "paid for part of [Indiana GRQ's] loss, but refused to pay for the cost of bringing electrical capacity and redundancy back to pre-event levels." (*Id.* ¶ 7.) "With respect to PCBs, [the Insurers] also paid over $2 million to repair and cleanup the Plant, but refused to finish the remediation project they started when they discovered how much it would cost." (*Id.* ¶ 8.)

Indiana GRQ has paid in full its $1 million deductible, and the Insurers have, to date, paid Indiana GRQ in excess of $2.6 million in several payments between January 2017 and May 2018, including payments related to removal of contaminated water and remediation of PCB contamination. (*Id.* ¶ 9.) Prior to this litigation, Indiana GRQ believed it was in the final stages of closing out its claim and had no indication from the Insurers that the claim would not be satisfactorily resolved. (*Id.* ¶ 10.)

Indiana GRQ alleges in its three-count complaint, including a claim for declaratory judgment, that "[t]he failure of the Defendant Insurers to acknowledge their coverage obligations and pay the claim is a breach of their contractual duties causing damage to [Indiana GRQ], and their attempt to avoid payment for the entirety of the loss, after paying the loss for years, is a bad faith effort to avoid their contractual duties." (*Id.* ¶ 11.)

The Insurers now move to transfer the case to Indiana, which Indiana GRQ opposes.

**II.    Standard of Review**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28

U.S.C. § 1404(a). Section 1404(a) is intended to "protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" *Cont'l Grain v. The FBL-585*, 364 U.S. 19, 27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960).

Due to the permissive language in the statute, this Court has broad discretion to grant or deny a motion to transfer. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). "The party seeking transfer bears the burden of proving that the transferee district is a superior venue to the transferor district." *Phelps v. United States*, No. 1:07-cv-02738, 2008 WL 5705574, at *1 (N.D. Ohio Feb. 19, 2008).

"Typically, more than one forum could be an appropriate venue for trial and some inconvenience will exist to either party no matter which venue is chosen." *Siegfried v. Takeda Pharm. N. Am., Inc.*, No. 1:10-cv-02713, 2011 WL 1430333, at *2 (N.D. Ohio Apr. 14, 2011). Thus, if transferring venue will merely "shift the inconvenience from one party to another," a change of venue is inappropriate. *Id.* at *2 (citing among authority *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)).

A district court decides motions to transfer on a case-by-case basis, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988); *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S. Ct. 544, 99 L. Ed. 789 (1955), using a two-step analysis. First, the court must determine whether the case "might have been brought" in the transferee court.[3] *Cont'l Grain*, 364 U.S. at 21. If so, the court then analyzes factors related to "the convenience of the parties and

---

[3] The parties here seem to be in agreement that this action "might have been brought" in either Ohio or Indiana—rendering each a "proper" forum. The issue argued is which is the superior forum. The parties also appear to agree that there is no forum selection clause in the relevant insurance contract, a copy of which—allegedly voluminous—has not been supplied. (*See* Compl. ¶ 25.)

various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).

"Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)).

Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

Importantly, no one factor that a district court should consider is determinative. *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989). The moving party has the burden of establishing that the factors weigh "strongly" in favor of transfer. *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998) (citing *Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993)).

**III. Discussion**

The gravamen of the Insurers' argument for transfer to Indiana is that the Plant where the Event occurred is located in Indiana, and that virtually all significant contacts and work to date occurred in Indiana, including cost estimates already obtained. Indiana is also where the vast majority of witnesses are located. The Insurers assert that only a few communications were directed by them to the managing company, IRG, in Ohio and that was at Indiana GRQ's request.

5

The Insurers argue that Ohio has only a tenuous relationship to this litigation and that the overwhelming majority of both the public and private factors weigh in favor of transfer.

Indiana GRQ argues in opposition that the relevant insurance policy was procured in Ohio (which, as it turns out, does not appear to be supported by the documents before the Court), the Plant was managed by IRG both on site (in Indiana) and out of Ohio, and the handling of the insurance claim by IRG occurred in Ohio. Indiana GRQ notes that the Insurers adjusted the claim through various offices in various states. According to Indiana GRQ, the fact that the Plant is located in Indiana is not controlling because the dispute is one of policy interpretation. In addition, Indiana GRQ claims that Ohio is the most convenient forum for Indiana GRQ, which should be given deference.

In reply, the Insurers insist that Indiana is the place where both the majority of witnesses and the subject property can be found and submit that the dispute it not a simple matter of contract interpretation, but also involves the proper amounts that are owed for the environmental remediation claim, which they say Indiana GRQ claims is somewhere between $11 million and $37 million. Additionally, they criticize Indiana GRQ's reliance upon its "affiliation" with non-party IRG, located in Ohio, as a legitimate basis for establishing venue.

### A. Plaintiff's Choice of Venue

"[A] district court must apply a strong presumption in favor of a plaintiff's selected forum, particularly if the forum is the home of the plaintiff, because 'it is reasonable to assume that this choice is convenient.'" *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523–24 (6th Cir. 2010) (quoting *Piper Aircraft Co.*, 454 U.S. at 255–56)). "When the plaintiff's choice of forum, however, is not the home of the plaintiff, the normally applicable assumption that the forum choice is convenient carries significantly less weight." *Id*.

6

It is undisputed that Ohio is not the "home" of Indiana GRQ; but, Indiana is where the Plant—Indiana GRQ's sole asset—is located, and it is also (unsurprisingly) where the Event occurred. Indiana GRQ offers no authority to support its assertion that venue in Ohio is proper because Ohio is home to an "affiliate" of Indiana GRQ—non-party IRG, asserted to be responsible for managing the Plant with employees on site (in Indiana) and from its offices in Ohio.

The Court perceives little reason to give much weight to Indiana GRQ's choice of Ohio, whose only connection to the litigation is the non-party property manager's office address.

B.   **Public and Private Interests**

The Court turns now to an analysis of the relevant public and private interests.

There is no dispute that the loss to the Plant—the only loss alleged in the complaint—occurred in Indiana. For venue purposes, it is irrelevant that non-party IRG "owns assets in over 30 states, and many of those assets—approximately 35 million square feet—are owned in Ohio—more than in any other state." (Miley Decl. ¶ 3.) Indiana GRQ argues that "the insurance policy at issue here . . . was procured in Ohio[.]" (Opp'n at 572.) But the record suggests that it was negotiated on behalf of plaintiff by a broker in Illinois (Miley Decl. ¶ 4), and was delivered to another Indiana GRQ affiliate (Industrial Realty Group, LLC) in Henrico, Virginia (*see* Doc. No. 16-12 at 220; *see also* Compl. ¶ 12). It *is* significant, however, that the sole asset of plaintiff, Indiana GRQ, is the Plant, which is located in Indiana. This explains Indiana GRQ's assertion in its complaint that it is "headquartered" in Indiana. (Compl. ¶ 12.) This factor weighs strongly in favor of transfer.

After the Insurers were placed on notice of the loss, their independent adjuster, Micah Thoman (located in Illinois), issued a reservation of rights letter on their behalf; this letter was issued to IRG in Larchmont, New York. (*See* Doc. No. 16-1.) As evidenced by various exhibits

7

attached to the Insurers' motion, claim communications between the Insurers (and/or their agents) and Indiana GRQ originated from and were directed to several different states, including Ohio. This factor, on balance, favors neither Ohio nor Indiana as the "superior venue."

Importantly in this case, during discovery and at trial, there will undoubtedly be a significant amount of evidence developed and presented concerning Indiana GRQ's environmental remediation claim. In fact, some evidence has already been developed in the form of initial reports by various entities hired to do the environmental remediation. Virtually all of that evidence is located in Indiana, where the Plant is located, not in Ohio. This factor weighs in favor of transfer.

Although Indiana GRQ asserts that its records relating to this insurance claim are kept in Ohio (*see* Opp'n at 579, n.4 (citing Miley Decl. ¶ 4)), many of the exhibits underlying the claim are attached to the Insurers' motion. Virtually all of them indicate that they were produced via email. Presumably, the records would therefore be readily available in other than hard-copy format. On balance, this factor is of limited significance.

The witnesses who will testify regarding the evidence are from various states, but many of them appear to be from Indiana. Notably, individuals from the Indiana Department of Environmental Management ("IDEM") have already had "significant involvement in the remedial efforts" at the Plant. (Mot. at 72.) Not surprisingly, IDEM's Ohio counterpart—the Ohio Department of Environmental Services—has played no role to date, having no jurisdiction over the Plant in South Bend, Indiana. This factor weighs in favor of transfer.

What the Court finds compelling in this case with respect to an appropriate forum is the location of the Plant and the nature of the loss for which responsibility is being apportioned. Despite the fact that Indiana GRQ would like to reduce the litigation to a mere matter of contract interpretation, because this involves significant environmental damage at the Plant, the State of

Indiana has a very great interest in assuring that Indiana GRQ completes the remediation and follow-up at the Plant, and does so effectively. As between Ohio and Indiana, Indiana has the stronger interest in making sure that this litigation addressing responsibility for cost distribution and sharing among all interested parties is carried out efficiently, correctly, and under its watchful eye. As a result, the pool from which jurors are drawn should be located "at [the] origin" of the litigation, that is, where the Plant is located, and the "burden [of jury duty] ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S. Ct. 839, 91 L.E. 1055 (1947). This factor weighs strongly in favor of transfer.

The Court finds unpersuasive Indiana GRQ's argument that "[t]his case addresses who will pay for damage at the Plant, not the standards applicable for repair or remediation." (Opp'n at 581.) Indiana GRQ claims that "[c]leanup of the Plant is not the issue, as it will proceed pursuant to applicable law." (*Id*.) It further claims that Ohio, not Indiana, has the only public interest in what Indiana GRQ characterizes as no more than a contract dispute. But the dispute here involves the extent of the remediation and the amount of the claim for which the Insurers are responsible. As indicated previously, witnesses from IDEM may have much to offer regarding this central issue.

It is also possible that even contract interpretation (*i.e.*, coverage under the contract for certain losses) will ultimately depend upon facts to be found by a jury as to the nature of the losses at the Plant. Those fact-findings, in turn, might necessitate a jury view of the Plant during trial. That can only occur in Indiana. *See*, *Gilbert*, 330 U.S. at 509 ("[t]here is a local interest in having localized controversies decided at home[]). This weighs strongly in favor of transfer.

9

The Court concludes that "the local interest in having localized controversies decided at home" is the public interest that weighs most strongly in favor of transfer to Indiana, where the damaged Plant itself is located and where interest in the outcome is the strongest.

Having weighed the public and private interests, the Court concludes that Indiana is the "superior venue."

## IV. Conclusion

For the reasons set forth herein, the Insurers' motion to transfer this case to the United States District Court for the Northern District of Indiana (Doc. No. 15) is granted.

**IT IS SO ORDERED**.

Dated: March 29, 2021

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**